WALBERG, Plaintiff in error, v. STATE, Defendant in error.
[Case No. 75–284–CR.]
DEISLER, Plaintiff in error, v. STATE, Defendant in error.
[Case No. 75–333–CR.]

*Nos. 75–284–CR, 75–333–CR.  Argued June 3, 1976.—*
*Decided June 30, 1976.*
(Also reported in 243 N. W. 2d 190.)

For the plaintiffs in error there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C. J.    The writs of error in these cases are directed to the orders denying the defendants' motions

for postconviction relief. By those motions each defendant has asserted that the person who signed the arrest warrants, under the authority of which they were brought before the court on the stated charges, had no authority to do so. They seek relief in the form of an order vacating the judgments of conviction on the ground that probable cause for the issuance of those warrants was not found by a "neutral and detached magistrate" as required by the Fourth Amendment.

The record in the case involving the defendant Walberg reveals that a criminal complaint charging Walberg with burglary was issued on October 20, 1972. On the basis of the information contained in that complaint and in an attached affidavit, John J. Kenney, purporting to act as a court commissioner, determined that probable cause existed for the issuance of a warrant for the arrest of Walberg. Such a warrant, also dated October 20, 1972, is a part of the record and is signed by John J. Kenney, "Court Commissioner as Judge."

The arrest warrant was executed on October 24, 1972 and, on the same day, the defendant appeared in the circuit court for Milwaukee county where probable cause was found to hold him for further proceedings. On November 3, 1972, a preliminary examination was conducted in county court and Walberg was ordered held for trial. Walberg's initial plea of not guilty, entered on November 17, 1972, was subsequently changed on May 29, 1973, to guilty. A judgment of conviction was entered on that plea and Walberg was sentenced to concurrent, indeterminate terms not to exceed 10 years in the Wisconsin state prisons. The record shows that at all relevant times Walberg was represented by counsel.

The record in the case involving the defendant Deisler shows that a criminal complaint charging Deisler with armed robbery was issued on January 11, 1973. That complaint was sworn to before John J. Kenney, acting as a court commissioner, and contains a finding by

Kenney that "there is probable cause for the issuance of a warrant in the above matter." No warrant authorizing Deisler's arrest appears as a part of the record here. However, the record reveals that Deisler appeared in court the day after the issuance of the warrant was authorized. For the purposes of this opinion it will be assumed that a warrant was, in fact, issued and executed under Kenney's signature.

At the initial appearance in circuit court probable cause was found, on the basis of the complaint, to hold Deisler for further proceedings. On January 16, 1973, Deisler, through counsel, challenged the complaint on the ground that the reliability of an informant had not been sufficiently established. That motion was denied. The case was assigned to the county court for a preliminary examination and Deisler was ordered held for trial. He initially entered pleas of not guilty and not guilty by reason of mental disease or defect to the original charge of armed robbery and the subsequent charge of rape. However, those pleas were subsequently changed to guilty on September 6, 1973. On November 8, 1973, Deisler was convicted on both charges and sentenced to an indeterminate term of 15 years on the armed robbery charge to run concurrently with his commitment under the Sex Crimes Act on the rape charge. Deisler was, at all times, represented by counsel.

The motions for postconviction relief on the part of both defendants contain substantially identical allegations. Those allegations are to the effect that the defendants had investigated the records in the circuit court for Milwaukee county with respect to the authority of John J. Kenney to act as a court commissioner or magistrate; that Kenney's term as court commissioner had expired at the time the arrest warrants were issued; and that, as a result:

"The issuance of the arrest warrant was authorized by a person who had no legal authority to do so, thereby constituting a denial of my right to have a neutral and detached magistrate determine the probable cause for the issuance of such warrant, and further denying my right to due process of law, and further depriving this Court of jurisdiction to proceed herein."

Attached to each motion for postconviction relief are three exhibits. The first is a copy of Kenney's appointment by Circuit Judge WILLIAM F. SHAUGHNESSY on August 28, 1961, to serve as a court commissioner for Milwaukee county. That appointment was pursuant to sec. 252.14 (3), Stats., which establishes the eligibility of "[a]ny former judge of an inferior court of record of this state" for appointment as a court commissioner. Under sec. 252.14 (1), the term of a court commissioner "shall continue until the expiration of the term of the judge who appointed him and until the successor of such commissioner is appointed and qualified." On the face of Exhibit 1 is the notation that Judge SHAUGHNESSY left office in 1966.

The second exhibit appears to be a response by the clerk of circuit court for Milwaukee county to the defendants' request for the record regarding Kenney's status as a court commissioner. According to the information on that exhibit, in addition to his appointment by Judge SHAUGHNESSY in 1961, Kenney was appointed Temporary Assistant Family Court Commissioner on January 11, 1966, by Circuit Judges ROBERT W. HANSEN and LEANDER J. FOLEY, JR.

Exhibit 3 is a copy of the latter appointment pursuant to sec. 247.13 (4), Stats.[1] The second page of the exhibit

---

[1] "(4) In any county one or more retired or former judges may be appointed as temporary or temporary assistant family court commissioners by a majority of the judges presiding over a family court branch in such county. Such temporary assistant

contains the signatures of all the judges of the circuit court approving Kenney's appointment, and provides, additionally:

"In accordance with Section 247.13 (2) Wis. Stats. we further here delegate the additional duties to the said John J. Kenney to act as magistrate in and for Milwaukee County."

In their brief urging a reversal of the orders denying the motions for postconviction relief, the defendants argue that the record clearly shows that Kenney had no authority to issue arrest warrants at the times in question. Renewing their arguments before the circuit court, the defendants contend that they were denied due process of law because the probable cause to arrest was not found by a neutral and detached magistrate. Finally, the defendants argue that the illegality of the arrest deprived the trial court of jurisdiction to proceed. The defendants contend the judgments of conviction should be vacated.

The state, on the other hand, argues that both defendants have failed to prove that John J. Kenney was without authority to issue arrest warrants. Even if the defendants were arrested pursuant to warrants issued by an unauthorized person, the state contends, this objection has been waived because it was not raised prior to the entry of pleas and cannot be raised for the first time by a motion for postconviction relief. In any event, the state concludes, the illegality of the arrest provides no basis for vacating the judgments of conviction.

The state appears to concede that if the arrest warrants were issued by a person who had no authority to do so, the arrests were illegal. In *State ex rel. White*

family court commissioners shall be compensated by the county for their services at the rate of $25 per half day, but shall be considered officers of the court or courts appointing them and not employes of the county."

*v. Simpson* (1965), 28 Wis. 2d 590, 597–599, 137 N. W. 2d 391, this court held it to be a constitutional requirement that probable cause for the issuance of an arrest warrant be determined by a neutral and detached magistrate. The purpose of the rule, mandated by the Fourth Amendment and applied to the states through the Fourteenth Amendment, is to "interpose the impartial judgment of a judicial officer between the citizen and the police and also between the citizen and the prosecutor, so that an individual may be secure from an improper search or an improper arrest." It is clear, therefore, that the complaint or other affidavit upon which is based a request for a search or arrest warrant must be made, under oath, before a magistrate or other person authorized to issue such warrants. *See: State ex rel. Pflanz v. County Court* (1967), 36 Wis. 2d 550, 153 N. W. 2d 559.

The defendants contend that because their original arrests were arguably illegal under the Fourth Amendment their subsequent convictions, albeit pursuant to guilty pleas, constituted a denial of due process, and that because a question of constitutional dimensions is involved, relief by postconviction motion is appropriate.

The United States Supreme Court has consistently held that the constitutional power of a court to try a person for a crime is not impaired by the illegality of his arrest. *See: Ker v. Illinois* (1886), 119 U. S. 436, 444, 7 Sup. Ct. 225, 229, 30 L. Ed. 421; *Frisbie v. Collins* (1952), 342 U. S. 519, 72 Sup. Ct. 509, 96 L. Ed. 541; *Gerstein v. Pugh* (1975), 420 U. S. 103, 95 Sup. Ct. 854, 43 L. Ed. 2d 54. In *Frisbie v. Collins, supra,* a petitioner sought a writ of habeas corpus, alleging that he had been kidnapped in Illinois by officers from the state of Michigan and taken into Michigan. He was there tried for and convicted of the crime of murder and sentenced to life imprisonment. In seeking *habeas corpus* he claimed that his trial and conviction under these circum-

stances violated the due process clause of the Fourteenth Amendment and that, as a result, his conviction was a nullity. In rejecting this argument the Supreme Court cited the rule set forth in *Ker* and other cases and declined to overrule them, stating at page 522:

"They rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will."

The court's position was most recently reaffirmed in *Gerstein v. Pugh, supra.* In that case the court was asked to consider the constitutionality of Florida procedures whereby a person arrested without a warrant and charged by information could be jailed or subjected to other restraints pending trial without an opportunity for a probable cause determination.

The court concluded that the procedures violated the Fourth Amendment and that such a person was entitled to a timely judicial determination by a neutral and detached magistrate of probable cause for significant pretrial restraint of his liberty. In so holding the court retraced its decisions dealing with the Fourth Amendment's requirement of probable cause to search or arrest. That requirement, the court held, represents a "necessary accommodation between the individual's right to liberty and the State's duty to control crime." The court concluded that the prosecutor's decision to file an information could not, standing alone, satisfy the requirements of the Fourth Amendment. However, the court stated at pages 118, 119:

"In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of

liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not prerequisite to prosecution by information. [Cases cited.] *Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. Frisbie v. Collins,* 342 U. S. 519 (1952); *Ker v. Illinois,* 119 U. S. 436 (1886). Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause. 483 F. 2d at 786–787. [Cases cited.]" (Emphasis supplied.)

It is clear from these cases that no issue of constitutional dimension is presented here. However, motions for postconviction relief under sec. 974.06, Stats., are not limited to such issues. Also within the scope of such a motion are questions concerning the jurisdiction of the trial court to enter the judgment or impose the sentence in question.[2]

The majority of courts have taken the position that the invalidity of the original arrest, even though seasonably raised, is immaterial to the jurisdiction of the trial court to proceed with the case.[3] This court, however, while holding that the illegality of an arrest does not

---

[2] *See: Loop v. State* (1974), 65 Wis. 2d 499, 222 N. W. 2d 694; *Hebel v. State* (1973), 60 Wis. 2d 325, 210 N. W. 2d 695; *Vara v. State* (1972), 56 Wis. 2d 390, 202 N. W. 2d 10.

[3] *See, generally:* 21 Am. Jur. 2d, *Criminal Law,* p. 401, sec. 380; 22 C. J. S., *Criminal Law,* pp. 381–384, sec. 144; *Williams v. Director, Patuxent Institution* (1968), 4 Md. App. 721, 245 Atl. 2d 105; *Sullivan v. Murphy* (D. C. Cir. 1973), 478 Fed. 2d 938; *Singleton v. State* (Ark. 1974), 510 S. W. 2d 283; *City of Mercer Island v. Crouch* (1975), 12 Wash. App. 472, 530 Pac. 2d 344; *Webber v. State* (Okla. Cr. 1975), 545 Pac. 2d 795; *State v. French* (Mo. App. 1975), 528 S. W. 2d 170; *People v. Lee* (1975), 84 Misc. 2d 192, 375 N. Y. Supp. 2d 812; *People v. Pagan* (1975), 84 Misc. 2d 565, 377 N. Y. Supp. 2d 420.

affect the trial court's subject-matter jurisdiction, has held that personal jurisdiction is dependent upon the defendant's physical presence before the court pursuant to a properly issued warrant, a lawful arrest or a voluntary appearance.[4]

In *State ex rel. La Follette v. Raskin, supra,* a police officer swore to a complaint on information and belief charging an individual with burglary. On the basis of that complaint, a deputy clerk of county court executed and issued a warrant for his arrest. Pursuant to that warrant the individual was arrested, taken before the court, and bound over to circuit court for trial. A trial was held but the jury could not reach a verdict. Subsequently, a motion to dismiss the information was brought on the ground that the arrest warrant had not been issued by a magistrate. The motion was denied and the court affirmed, stating at page 45:

"In order to try a person for the commission of a crime, the trial court must have jurisdiction of both the subject matter and the person of the defendant. Although jurisdiction of the subject matter is derived from law and cannot be waived nor conferred by consent, this is not true of jurisdiction over the person. Several Wisconsin cases have held that by entering a plea of not guilty at his arraignment, a defendant has submitted to the jurisdiction of the circuit court over his person. In *Kushman v. State ex rel. Panzer* [(1942), 240 Wis. 134, 2 N. W. 2d 862] this court, in response to the defendant's postconviction attack (by *habeas corpus*) on his conviction on the theory that the complaint stated no offense, denied *habeas corpus* and stated:

" 'Defendant entered a plea of not guilty, demanded a jury trial, and the trial court proceeded without any

---

[4] *See: Kelley v. State* (1972), 54 Wis. 2d 475, 195 N. W. 2d 457; *Lampkins v. State* (1971), 51 Wis. 2d 564, 187 N. W. 2d 164; *State ex rel. La Follette v. Raskin* (1966), 30 Wis. 2d 39, 139 N. W. 2d 667; *State ex rel. Wojtycski v. Hanley* (1945), 248 Wis. 108, 20 N. W. 2d 719; *Gaertner v. State* (1967), 35 Wis. 2d 159, 164, 150 N. W. 2d 370.

challenge as to the sufficiency of the complaint. If it was insufficient for any reason it should have been challenged before proceeding with the trial. . . [Citing the forerunner of sec. 955.09, Stats.]' "

■ In applying the principles set forth in *Frisbie v. Collins, supra,* this court in *Raskin, supra,* noted that due process is satisfied following an illegal arrest when the accused has been bound over following a preliminary hearing involving a finding of probable cause, has been arraigned by the circuit court, and has received a fair trial. The court concluded that "a defendant who has appeared in court with counsel without contesting the validity of the arrest, has submitted to the jurisdiction of the court and has waived his right to attack the arrest warrant." However, the court determined that an accused should be allowed to challenge the arrest "at the earliest opportunity that he appears in the trial court" for arraignment, even though probable cause has already been found at the preliminary examination. The purpose of this rule, the court said, was "to enforce the purpose of the *White* rule which is to assure that arrest warrants will be issued only on probable cause as determined by a neutral magistrate." The court further held that as to any conviction that has been finalized following a plea of guilty without preserving the objection to the validity of the arrest, such an objection could not be raised later in collateral proceedings.

This court has consistently adhered to the rules set forth in *Raskin, supra. See: State ex rel. La Follette v. Moser* (1966), 30 Wis. 2d 56, 139 N. W. 2d 632; *Gaertner v. State, supra; Pillsbury v. State* (1966), 31 Wis. 2d 87, 142 N. W. 2d 187; *Lampkins v. State, supra; State v. Kuecey* (1973), 60 Wis. 2d 677, 211 N. W. 2d 453; *Day v. State* (1971), 52 Wis. 2d 122, 187 N. W. 2d 790. In the *Kuecey Case,* the defendant, by postconviction motion, sought to raise several questions, including the

validity of his arrest. This court held that the objection had been waived because not raised by motion before trial as required by sec. 971.31 (2), Stats.,[5] and stated at pages 681, 682:

"On a number of occasions, we have pointed out the distinction between subject matter jurisdiction and personal jurisdiction of the defendant in criminal proceedings. [Cases cited.] Here no issue is raised as to subject matter jurisdiction. The trial court had lawful authority to inquire into the charge of the crime, to apply the law and to declare the judgment and sentence. The defendant having entered a plea, with no timely objection having been made to personal jurisdiction, no defect in that respect can now be claimed.

"It was held in *Lampkins v. State, supra,* pages 570, 571, that:

"'. . . Failure of probable cause to arrest goes to the question of jurisdiction over the person. ". . . Jurisdiction does not depend upon the warrant but upon the accused's physical presence before the magistrate. . . .'

"'". . . [A] defendant who has appeared in court with counsel without contesting the validity of the arrest, has submitted to the jurisdiction of the court and has waived his right to attack the arrest warrant."'"

In this case both defendants were represented by counsel. Both concede that no objection was raised concerning the validity of their arrests prior to the entry of a plea in the trial court. Both eventually pleaded guilty and were duly convicted and sentenced.

[5] "(2) Except as provided in sub. (5), defenses and objections based on defects in the institution of the proceedings, insufficiency of the complaint, information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence shall be raised before trial by motion or be deemed waived. The court may, however, entertain such motion at the trial, in which case the defendant waives any jeopardy that may have attached. The motion to suppress evidence shall be so entertained with waiver of jeopardy when it appears that the defendant is surprised by the state's possession of such evidence."

The defendants nevertheless argue that there has been no waiver here. They contend that such a waiver must be knowledgeable and depend upon a "considered choice" on their part. They argue that there was no knowledgeable waiver here because they were unaware of the factual circumstances which rendered the arrests illegal. They point out that Kenney signed the arrest warrants as a "court commissioner" and that it was only subsequent to the conviction that it was discovered that he may not have been so qualified at the time.

At common law a waiver is established by showing that the party against whom the waiver is asserted had at the time knowledge, actual or constructive, of the existence of his right and of the facts on which those rights depended. Ignorance of a material fact negatives a waiver and a waiver cannot be established by a consent given under mistake of fact.[6] In *Attoe v. State Farm Mut. Automobile Ins. Co.* (1967), 36 Wis. 2d 539, 153 N. W. 2d 575, this court held that the knowledge of facts by the party against whom waiver is asserted may be constructive as well as actual. "Constructive knowledge" was defined as the "knowledge which one who has the opportunity, by the exercise of ordinary care, to possess."

As the circuit court pointed out in its decision on the motion by Deisler in this case, the facts which allegedly establish Kenney's lack of authority to issue arrest warrants were matters of public record and available at the time each party pleaded to the charges against him. Both defendants were represented by counsel who had an opportunity to raise the appropriate objection. There is no allegation or evidence of a deliberate attempt by Mr. Kenney to exceed his real authority in this case.

[6] *See, generally:* 28 Am. Jur. 2d, *Estoppel and Waiver*, p. 841, sec. 158; *Davies v. J. D. Wilson Co.* (1957), 1 Wis. 2d 443, 85 N. W. 2d 459; *Nolop v. Spettel* (1954), 267 Wis. 245, 64 N. W. 2d 859.

Nor is there any evidence or allegation of an attempt by the prosecution to "cover up" for Mr. Kenney's alleged lack of authority.

■ Since no objection to the court's personal jurisdiction over the defendants was raised prior to pleading, that objection has been waived and may not now be raised for the first time by motion for postconviction relief.

■ Although the majority of the court would base our affirmance here on waiver, the writer of this opinion would hold that an objection based on the alleged illegality of an arrest cannot be raised by collateral attack following a valid conviction. The decisions of this court indicate that no defect as to personal jurisdiction exists once an accused appears in court and enters a plea. *See, e.g., State ex rel. Prentice v. County Court* (1975), 70 Wis. 2d 230, 234 N. W. 2d 283. Consistent with this rule, the writer would adopt the analysis of former Chief Justice CURRIE in his concurring opinion in *State ex rel. La Follette v. Moser, supra.*

In *Moser,* a paternity case, the defendant had been arrested pursuant to a warrant issued by the deputy clerk of county court. He appeared with counsel, was arraigned and pleaded not guilty. Before the case came to trial a motion was made to dismiss on the ground that the warrant had been issued by an unauthorized person. This court reversed an order of dismissal on the ground that the motion was not timely made. The court rejected an argument by the defendant that no waiver could occur since *State ex rel. White v. Simpson, supra,* upon which he relied, was not decided until after his arrest, bind over and plea. The court stated that *White* merely reiterated principles which had been set forth in prior Supreme Court cases and that, as a result, the defendant must be held to have had knowledge of his rights before pleading. In his concurring opinion, Chief Justice CURRIE stated at pages 61, 62:

■

"The rule adopted in the court's opinion, which holds that any objection to the sufficiency of the warrant must be made before entering a plea on arraignment in order to be timely, does not rest upon waiver by defendant of a known right. Once the court has jurisdiction of the defendant by entry of his plea any invalidity of the arrest is immaterial. The arrest only serves the purpose of getting the defendant before the court for arraignment, and when the latter point has been reached the arrest drops out of the picture.

"Thus once the proceeding gets past the arraignment step it is purely a policy and not a constitutional decision as to whether or not to permit the validity of the arrest to be thereafter questioned. This court has determined there will be sufficient discouragement of use of constitutionally tainted warrants by law enforcement officers if the defendant is permitted to raise the issue up to time of pleading on the arraignment. Furthermore, if the objection is timely made and the trial court erroneously rules against defendant on the warrant issue, this policy is sufficiently effectuated by permitting review thereof at any time up to the time judgment of conviction is finalized by expiration of the time for appeal or issuance of a writ of error, but not by collateral attack thereafter."

While we have held that the defendants' objections based upon the alleged illegality of the arrests were not timely raised, there is another equally persuasive reason for affirming the orders in these cases. It is generally recognized in this state and elsewhere that the acts of a *de facto* officer are valid as to the public and third parties and cannot be attacked collaterally. The acts are binding and valid until the individual is ousted from his office by the judgment of a court in a direct proceeding to try his title to the office.[7]

■ Generally, all that is required to make a person an officer *de facto* is that the person claiming office be

[7] *See:Pamanet v. State* (1971), 49 Wis. 2d 501, 182 N. W. 2d 459; *Burton v. State Appeal Board* (1968), 38 Wis. 2d 294, 156 N. W. 2d 386.

464

in possession of it, performing its duties, and claiming to be such an officer under color of election or appointment.[3] It is clear from the record here that in issuing the arrest warrants John J. Kenney was purporting to act as a duly appointed court commissioner. It is undisputed that court commissioners have the authority to issue arrest warrants. *See:* secs. 968.04 and 967.02 (6), Stats. We conclude that Kenney's actions in issuing the arrest warrants were supported by the color of authority attaching to his *de facto* status as a court commissioner. Accordingly, no collateral attack upon that authority is permitted here.

*By the Court.*—Orders affirmed.

---

[3] *See: State ex rel. Reynolds v. Smith* (1964), 22 Wis. 2d 516, 126 N. W. 2d 215; *Schoonover v. Viroqua* (1944), 245 Wis. 239, 14 N. W. 2d 9.