STATE of Wisconsin, Plaintiff-Appellant,

v.

Michael Paul RODGERS, Defendant-Respondent.†

Court of Appeals

*No. 82–1930–CR. Submitted on briefs June 13, 1983.—Decided September 13, 1983.*
(Also reported in 339 N.W.2d 605.)

† Petition to review granted.

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Stephen W. Kleinmaier,* assistant attorney general.

For the respondent the cause was submitted on the brief of *Jerold W. Breitenbach* and *Breitenbach & Zievers* of Kenosha.

Before Foley, P.J., Dean and Cane, JJ.

FOLEY, P.J.   The state appeals the circuit court's order dismissing a criminal complaint against Michael Rodgers. The court concluded that the warrantless arrest of Rodgers in his home was unlawful and deprived the court of personal jurisdiction.[1]  Because the consent obtained by the arresting officers to enter Rodgers' home was invalid, we affirm the circuit court order.

The court found that the arresting officers went to Rodgers' home intending to arrest him. When Rodgers' mother met them at the door, the officers identified themselves, told her that they wanted to talk to her son, and asked whether he was home. Neither officer told her that they wanted to arrest Rodgers. Rodgers' mother then admitted the officers and led them to him. The officers told Rodgers that they wanted to talk to him, but when he started to say something he was told that he was under arrest. The state does not contest these findings .

Absent exigent circumstances or consent, police may not enter a private dwelling to effect a warrantless arrest. *Payton v. New York,* 445 U.S. 573, 577 (1980) ; *Laasch v. State,* 84 Wis. 2d 587, 595, 267 N.W.2d 278, 284 (1978). Consent is not to be lightly inferred, but

[1] *See Walberg v. State,* 73 Wis. 2d 448, 457–59, 243 N.W.2d 190, 195–96 (1976).

rather the state must show by clear and convincing evidence that a free, intelligent, unequivocal, and specific waiver was made. *Laasch*, 84 Wis. 2d at 592, 267 N.W.2d at 282.[2]

██

Based on the circuit court's findings, the consent obtained by the officers to enter Rodgers' home was invalid because the officers obtained it by deception. *See McCall v. People*, 623 P.2d 397, 403 (Colo. 1981); *State v. Bailey*, 417 A.2d 915, 919 (R.I. 1980). The officers went to Rodgers' home intending to arrest him, yet they told his mother that they wanted to talk to him. Their statement carried the clear implication that they merely wanted to question Rodgers, not arrest him. The only possible reason for this subterfuge was to obtain a consent to enter Rodgers' home that they doubted they could obtain if they stated the true purpose of their visit. If we were to approve this type of conduct by upholding Rodgers' arrest, we would permit an important state and federal constitutional right to be vitiated by the guile of those on whom we depend to protect our rights.[3]

*By the Court.*—Order affirmed.

CANE, J. *(dissenting)*. I would reverse on the basis that the officers' statements to the mother did not undermine the voluntary character of her consent. The offi-

---

[2] Although *Laasch v. State*, 84 Wis. 2d 587, 267 N.W.2d 278 (1978), speaks in terms of waiver, the state argues convincingly that the question is not controlled by the intentional relinquishment of a known right test of *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), but rather by the "voluntariness" test of *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). "Voluntariness" in this context means the absence of explicit or implicit coercion. *Id.* at 228. Even if this is the case, we would still conclude that a warrantless entry of a home, based on consent obtained by deception, was unreasonable and was prohibited by Wis. Const. art. I, § 11.

[3] We do not hold that police must state the purpose of their visit to a home in order to obtain a valid consent to enter, only that they may not gain entry through deception.

cers did not conceal their identities, nor did they misrepresent their purpose for being there. Without being explicit, they stated that they wanted to talk with her son, and the mother sought no further elaboration. A police officer should have the right to execute his lawful function without having to advertise his every move. *See In re Anthony F.*, 442 A.2d 975, 980 (Md. Ct. App 1982).

In *Johnson v. State*, 75 Wis. 2d 344, 351–52, 249 N.W.2d 593, 597 (1977), the police officers went to the house of the defendant's parents. The defendant's father appeared, and the officers asked whether the defendant lived there. The officers were then allowed to enter the house where they arrested the defendant. The supreme court concluded that because there was no forcible entry and no indication that the police deliberately avoided procuring a warrant, the arrest was valid.

In our situation, there was no suggestion of a forcible entry or that the police did anything to induce the mother to act against her will. The majority's conclusion that the only possible reason for their statement to the mother was to obtain a consent to enter her home, which they doubted could be obtained if they stated the true purpose of their visit, is without support in the record. Such a factual conclusion is without merit and is merely speculative at best.

I would conclude that the proper test for determining the voluntariness of a consent to enter a private dwelling is whether the consent was coerced by explicit or implicit means, or by implied threat or covert force. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). Under the totality of the circumstances of the case before us, the consent was admittedly not the result of any form of coercion and was therefore voluntary.

Additionally, I would reverse on the basis that the invalidity of the original arrest, even though timely raised,

is immaterial to the trial court's jurisdiction to proceed with the case. I am aware of the doctrine that decisions of the courts of last resort should be followed by lower courts until reversed or overruled. This is a good rule and should be followed by our appellate court to maintain an orderly justice system. Nevertheless, I feel strongly that Wisconsin's rule[1] on this subject is difficult, if not impossbile, to justify with law or logic. Wisconsin's rule provides for the extreme sanction of setting aside a conviction that has been obtained after a fair trial. Wisconsin appears to be the sole execption to the rule that the manner in which a defendant is brought before a court is no bar to the court's jurisdiction to try the case, nor may it successfully be set up as a bar to a conviction. *See Albrecht v. United States,* 273 U.S. 1 (1927) ; *White v. United States,* 328 F.2d 304 (8th Cir. 1964) ; *Howard v. District of Columbia,* 132 A.2d 150 (D.C. Mun. App. 1957) ; *People v. Smith,* 143 N.E.2d 50 (Ill. 1957) ; *Commonwealth v. Gorman,* 192 N.E. 618 (Mass. 1934) ; *People v. Miller,* 209 N.E. 81 (Mich. 1926) ; *State v. Baron,* 207 A.2d 447 (N.H. 1965) ; 22 C.J.S. *Criminal Law* § 144 (1961) ; 21 Am. Jur. 2d *Criminal Law* § 380 (1981) ; 5 Am. Jur. 2d *Arrest* § 116 (1962) ; Annot., 56 ALR. 260 (1928).

In the present case, we are concerned with neither tainted evidence nor a confession obtained as a result of an illegal arrest. Rodgers' only argument is that the

[1] Wisconsin, while holding that the illegality of an arrest does not affect the trial court's subject matter jurisdiction, holds that personal jurisdiction is dependent upon the defendant's physical presence before the court pursuant to a properly issued warrant, a lawful arrest or a voluntary appearance. *See Kelley v. State,* 54 Wis. 2d 475, 195 N.W.2d 457 (1972) ; *Lampkins v. State,* 51 Wis. 2d 564, 187 N.W.2d 164 (1971) ; *Gaertner v. State,* 35 Wis. 2d 159, 150 N.W.2d 370 (1967) ; *State ex rel. La Follette v. Raskin,* 30 Wis. 2d 39, 139 N.W.2d 667 (1966) ; *State ex rel. Wojtycski v. Hanley,* 248 Wis. 108, 20 N.W.2d 719 (1945).

court was without jurisdiction over his person because of an invalid arrest. The rule adopted by a large majority of the courts in the United States rests on the sound basis that due process of law is satisfied when one, present in court, is convicted of a crime after having been fully apprised of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. Nothing in the United States Constitution requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will. *Ker v. Illinois,* 119 U.S. 436, 444 (1886).

Arrest and detention are primarily for security purposes and not for the purpose of conferring jurisdiction to the courts. It is the proper filing of a valid complaint, not the arrest, that is essential to commence a criminal proceeding. Section 968.02, Stats. Due process is satisfied following an illegal arrest when the accused has been fairly apprised of the charges against him in a criminal complaint, has been bound over for trial following a preliminary hearing with a probable cause finding, has been arraigned by the circuit court, and has received a fair trial. An individual wrongfully arrested has civil remedies available to him for damages as well as exclusion of any evidence obtained as a result of an invalid arrest.

I would suggest that the majority rule is fair to both the state and the accused. Consequently, I would reverse the trial court on the basis that the court had jurisdiction of the subject matter. Rodgers was before the court on a proper accusatory pleading, he was provided a preliminary examination with a sufficient finding of probable cause, and he was properly arraigned before the circuit court. His trial had not been commenced. Accordingly, the invalidity of his original arrest should be immaterial to the validity of the circuit court's jurisdiction to proceed with the trial.